## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KALIMA JAMILA HAYWARD, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 24-CV-5602 |
| | : | |
| USAA FEDERAL | : | |
| SAVINGS BANK, *et al.*, | : | |
|     Defendants. | : | |

## MEMORANDUM

**BEETLESTONE, J.**                                                        **DECEMBER 13th , 2024**

    Plaintiff Kalima Jamila Hayward, a self-represented litigant, commenced this civil action by filing a Complaint against USAA Federal Savings Bank ("USAA"), Navy Federal Credit Union, Truist Bank, SunTrust Bank, and Kik Off Lending, LLC, asserting claims under numerous consumer protection statutes and regulations.  (*See* ECF No. 1.)  In a prior order, the Court granted Hayward's Motion for Leave to Proceed *In Forma Pauperis*.  (*See* ECF Nos. 2, 5.) For the following reasons, the Court will dismiss Hayward's Complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

## I.    FACTUAL ALLEGATIONS[1]

    Hayward states that "around September 2022 and October 2022, [she] noticed that there were fraudulent activities involving unauthorized transactions on [her] USAA credit card," and that she "had been receiving fraud text messages asking [her] for a code dating back to December 2022."  (Compl. at 5.)  She claims that she contacted USAA "immediately" to tell them that she had been "a victim of identity theft" and asked for "the account to be investigated

---

[1]  The facts set forth in this Memorandum are taken from Hayward's Complaint (ECF No. 1). The Court adopts the pagination assigned to the Complaint by the CM/ECF docketing system.

and for all billing and collections to cease until the investigation was completed," and "to change the date of [her] payments" pending the investigation because she "had taken a financial hit due to the hacking of [her] account." (*Id.*) She alleges that "USAA did not investigate, USAA did not change [her] payment date, and USAA did not cease billing activity and continued to charge late fees and penalties while they were informed that there was fraudulent activity on the account." (*Id.*)

Hayward states that she also entered into an automobile loan with USAA on July 14, 2022.[2] (*Id.*) She claims that, on some unspecified date, she called USAA to tell them that "the card that they had on file to pay the auto [loan] had been compromised along with the USAA credit card and to cease processing any electronic automated payments using that card because [she was] a victim of identity theft and there was theft associated with the cards on file." (*Id.*) She also asked to change the payment dates for the auto loan. (*Id.*) She claims that USAA "continued to process payments with the cards that had been compromised due to identity theft . . . [and] never updated [her] new card information," which led to her payments on the auto loan being "returned by [the] USAA remittance processing department." (*Id.*)

Hayward alleges that USAA never investigated her claims of fraudulent charges on her USAA credit card, and that it "continued over time accelerating the charges of late fees during the account investigation on both the credit card and auto loan accounts while the accounts were in dispute." (*Id.* at 5-6.) USAA then closed the credit card and auto loan accounts for being in default and "threaten[ed]" to repossess her car. (*Id.* at 6.)

Hayward also claims that "[o]n or around April 12, 2023," she discovered that USAA "was furnishing inaccurate information on [her] consumer report," including the auto loan, the

---

[2] Hayward included the loan agreement as an exhibit. (*See* Compl. at 37-44.)

USAA credit card account that she "disputed for fraud," and "an alleged personal loan that [she] did not authorize." (*Id.*) She states that she has filed numerous complaints with the Federal Trade Commission, Consumer Financial Protection Bureau, and disputed the inaccurate information with the three credit reporting agencies, Experian, Transunion, and Equifax, as well as with USAA. (*Id.* at 6.) She claims that USAA itself is perpetrating "identity theft" against her for disclosing negative credit information without providing her an opportunity to "opt out," as well as claiming various inaccuracies in her credit report. (*Id.* at 6-7.)

Hayward further alleges that "[o]n or around August 27, 2024," she "noticed" that Defendants Navy Federal Credit Union, SunTrust Bank, Truist Bank, and Kik Off Lending LLC "have been inaccurately reporting" information to the credit reporting agencies. (*Id.* at 7.) As with her claims against USAA, she asserts that these Defendants have been furnishing negative credit information without giving her the opportunity to "opt out." (*Id.*) She does not provide specific factual details as to these Defendants in her Complaint, instead cross-referencing to her numerous exhibits.

She claims that, as a result of USAA's alleged "violations," she has "suffered mental anguish, emotional distress, economic loss, and the benefits of just being able to have good credit." (*Id.* at 8.) She claims that, due to the threat of repossession, she "cannot enjoy the benefits of driving [her] car" and that she "must live in fear that USAA . . . will come and repossess [her] car at any time of day or night, breaching [her] peace." (*Id.*) She claims to have lost "job interview opportunities because [she] cannot drive the car because of the fear" of repossession. (*Id.*) She claims that the actions of the remaining Defendants have caused her to suffer damages "including economic loss, damage to reputation, emotional distress, and interference with the benefits of enjoying good credit." (*Id.*)

Hayward alleges violations of various federal consumer protection statutes and criminal statutes. (*Id.* at 8-13.) She seeks $10,000 in damages from each Defendant and injunctive relief to "remove and delete the negative accounts" from her credit report. (*Id.* at 13-14.)

## II.    STANDARD OF REVIEW

The Court granted Hayward's motion for leave to proceed *in forma pauperis* in a prior Order. (*See* ECF No. 5.) Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Amended Complaint if it fails to state a claim to relief, an inquiry governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). At the screening stage, the Court will accept the facts alleged in the *pro se* Complaint as true, draw all reasonable inferences in Hayward's favor, and "ask only whether that complaint, liberally construed, contains facts sufficient to state a plausible claim." *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (cleaned up), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.

As Hayward is proceeding *pro se*, the Court construes her allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala*, 704 F.3d at 245). An unrepresented litigant "cannot flout procedural rules - they must abide by the same rules that apply to all other litigants." *Id.*

In that regard, a complaint may be dismissed for failing to comply with Federal Rule of Civil Procedure 8. *Garrett v. Wexford Health*, 938 F.3d 69, 91 (3d Cir. 2019). Rule 8 requires a

pleading to include a "short and plain statement showing that the pleader is entitled to relief," as well as a statement of the court's jurisdiction and a demand for the relief sought. Fed. R. Civ. P. 8(a). In determining whether a pleading meets Rule 8's "plain" statement requirement, the Court should "ask whether, liberally construed, a pleading 'identifies discrete defendants and the actions taken by [the named] defendants' in regard to the plaintiff's claims." *Garrett*, 938 F.3d at 93 (citation omitted). "Naturally, a pleading that is so vague or ambiguous that a defendant cannot reasonably be expected to respond to it will not satisfy Rule 8." *Id.* (internal quotations omitted). The important consideration for the Court is whether, "a pro se complaint's language . . . presents cognizable legal claims to which a defendant can respond on the merits." *Id.* at 94.

## III.    DISCUSSION

### A.    Misjoinder of Claims

Hayward's Complaint primarily concerns her allegations against USAA. She then adds claims against the remaining four Defendants, Navy Federal Credit Union, SunTrust Bank, Truist Bank, and Kik Off Lending LLC, that are completely unrelated to her claims against USAA. The joinder of these claims and defendants is not consistent with the Federal Rules of Civil Procedure.

Federal Rule of Civil Procedure 18(a) states that "[a] party asserting a claim, . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." Federal Rule of Civil Procedure 20 allows a plaintiff to join multiple defendants in one action if: (a) "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences"; and (b) "any question of law or fact common to all defendants will arise in the action." "For courts applying Rule 20 and related rules, 'the impulse is toward entertaining the broadest

5

possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.'" *Hagan v. Rogers*, 570 F.3d 146, 153 (3d Cir. 2009) (*quoting United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966)).

"But this application, however liberal, is not a license to join unrelated claims and defendants in one lawsuit." *McKinney v. Prosecutor's Office*, No. 13-2553, 2014 WL 2574414, at *14 (D.N.J. June 4, 2014) (internal quotations omitted). "Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). "Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [results from combining numerous claims against numerous defendants in one suit] but also to ensure that prisoners pay the required filing fees" as required by the PLRA and to ensure that a prisoner is not circumventing the principles behind § 1915(g). *Id.* District courts may raise the issue of improper joinder under the Federal Rules *sua sponte*. *See* Fed. R. Civ. P. 21; *Schulman v. J.P. Morgan Inv. Mgmt., Inc.,* 35 F.3d 799, 804 (3d Cir.1994). To remedy a misjoinder, a Court may drop a party or sever any claims. *See* Fed. R. Civ. P. 21.

Defendants Navy Federal Credit Union, SunTrust Bank, Truist Bank, and Kik Off Lending LLC will be dropped from the case. Not only are Hayward's claims against these Defendants misjoined with her claims against USAA, but they also fail to satisfy Rule 8. Hayward merely states in conclusory fashion, with bare recitations of statutory text and cross-reference to numerous exhibits, that these four Defendants violated her consumer rights. (*See* Compl. at 7-13.) This manner of pleading fails to state any cognizable claim to which these four Defendants could respond on the merits. *See Garrett*, 938 F.3d at 94; *see also Berkery v. Credit Collection Servs.*, No. 21-3809, 2021 WL 4060454, at *2 (E.D. Pa. Sept. 7, 2021) (" While a

court may consider exhibits attached to a complaint, merely attaching exhibits is insufficient to meet the requirement that a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face."); *RD Legal Funding, LLC v. Barry A. Cohen, P.A.*, No. 13-77, 2013 WL 1338309, at *2 (D.N.J. Apr. 1, 2013) ("Plaintiff cannot meet its pleading requirements under Rule 8(a) by attaching numerous exhibits to its Complaint.").

Accordingly, Navy Federal Credit Union, SunTrust Bank, Truist Bank, or Kik Off Lending LLC, will be terminated as Defendants in this action.  The Court will dismiss Hayward's claims against these four Defendants without prejudice to allow her to reassert any claim she may wish to pursue in separate civil actions, in the event that Hayward can state a claim to relief.  *See DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006) ("When a court 'drops' a defendant under Rule 21, that defendant is dismissed from the case without prejudice."); *Ferretti v. Northampton Cnty. Jail*, No. 21-3530, 2021 WL 4306054, at *5 n.5 (E.D. Pa. Sept. 22, 2021) (dismissing misjoined claims without prejudice to reassertion in separate civil action) (citations omitted).

### B.    FCRA Claims

Hayward has failed to state a claim under the Fair Credit Reporting Act ("FCRA").[3]  The FCRA was enacted "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy."  *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52

---

[3]  Hayward cites the Gramm-Leach-Bliley Act, 15 U.S.C. § 6801, *et seq.*, as a basis for her claims, although she erroneously refers to this statute as part of the FCRA.  (*See* Compl. at 10.) As this Court explained to Hayward in a prior case, the Gramm-Leach-Bliley Act does not support a private cause of action, so any such claims will be dismissed with prejudice.  *See Hayward v. Southwest Cred. Sys.*, No. 23-3234, 2024 WL 169570, at *2 n.2 (E.D. Pa. Jan. 16, 2024) (citing *USAA Fed. Sav. Bank v. PLS Fin. Servs., Inc.*, 340 F. Supp. 3d 721, 726 (N.D. Ill. 2018) ("[I]t is well-recognized that the [Gramm-Leach-Bliley Act] does not provide a private right of action to enforce its rules." (citing cases)); *Barroga-Hayes v. Susan D. Settenbrino, P.C.*, No. 10-5298, 2012 WL 1118194, at *5 (E.D.N.Y. Mar. 30, 2012) (same)).

(2007); *see also SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 355, 357 (3d Cir. 2011) (noting that the FCRA is intended "to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant and current information in a confidential and responsible manner" (quoting *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010))).  In the language of the FCRA, credit reporting agencies "collect consumer credit data from 'furnishers,' such as banks and other lenders, and organize that material into individualized credit reports, which are used by commercial entities to assess a particular consumer's creditworthiness."  *Seamans v. Temple Univ.*, 744 F.3d 853, 860 (3d Cir. 2014).

"[U]nder the FCRA, 15 U.S.C. § 1681s-2(b) is the only section that can be enforced by a private citizen seeking to recover damages caused by a furnisher of information."  *Eades v. Wetzel*, 841 F. App'x 489, 490 (3d Cir. 2021) (*per curiam*) (internal quotations omitted).  To state a plausible claim under that provision of the FCRA against a furnisher of credit information, such as USAA, Hayward must allege that she "filed a notice of dispute with a consumer reporting agency; the consumer reporting agency notified the furnisher of information of the dispute; and the furnisher of information failed to investigate and modify the inaccurate information."  *Harris v. Pennsylvania Higher Educ. Assistance Agency/Am. Educ. Servs.*, No. 16-693, 2016 WL 3473347, at *6 (E.D. Pa. June 24, 2016), *aff'd sub nom. Harris v. Pennsylvania Higher Educ. Assistance Agency/Am. Educ. Servs.*, 696 F. App'x 87 (3d Cir. 2017); *see also* 15 U.S.C. § 1681s-2(b).  "[T]here must be some threshold showing of inaccuracy to make a claim against a furnisher."  *Holland v. Trans Union LLC*, 574 F. Supp. 3d 292, 302 (E.D. Pa. 2021).

The factual bases for Hayward's FCRA claims against USAA are not entirely clear from her pleading.  The Court construes her Complaint to allege that USAA reported negative information about (1) her USAA credit card account, despite her disputing certain charges on that account, and (2) her auto loan, despite issues with her payment methods that she allegedly communicated to USAA but were never resolved.

However, Hayward's allegations are largely unclear because of her inconsistent use of the term "identity theft," which she appears to employ in two different contexts.  First, she appears to claim to have been the "victim of identity theft" in the sense that she claims certain transactions were made on existing credit accounts, or new accounts opened in her name, without her knowledge or authorization.  (*See, e.g.*, Compl. at 5-6 (noting "unauthorized transactions on a USAA credit card" and "an alleged personal loan that [Hayward] did not authorize").)  Second, she asserts that USAA's transmission of her financial information to credit reporting agencies without her "consent" and without providing her an opportunity to "opt out" was also "identity theft."  (*See id.* at 6-7.)

As to this second usage of the term "identity theft," this Court has previously explained to Hayward that she misconstrues her rights under federal law.  *See Hayward*, 2024 WL 169570, at *3.  "The FCRA simply does not have a consumer 'opt out' provision."  *Frazier v. Transunion*, No. 23-3637, 2023 WL 6323088, at *4 (E.D. Pa. Sept. 28, 2023).  Although the FCRA protects consumers' privacy rights by dictating how furnishers must report information to consumer reporting agencies if they do so, *see* 15 U.S.C. § 1681s-2, it does not require furnishers of information to obtain consent from the consumer prior to sharing information with credit reporting agencies about the consumer's accounts.  Nevertheless, this provision of her credit information without her consent or opportunity to opt out appears to be the primary basis upon

which Hayward alleges that USAA is either violating the FCRA or upon which she claims that the reported information is inaccurate.  Accordingly, any FCRA claim that she asserts on this theory of "identity theft" fails because it is predicated upon a fundamental misunderstanding of the statute.  *See Frazier*, 2023 WL 6323088, at *4 (finding plaintiff failed to allege an FCRA claim where he contended that furnisher and credit reporting agency "violated his rights because they have publicized private information without his consent" and that this "delinquent account information [should be] excluded from his credit file and/or consumer report based on his purported election to 'opt out' of the inclusion of this information").

As to any claims related to Hayward's first use of the term "identity theft," stemming from her dispute of transactions made on her accounts (or accounts opened in her name) purportedly without her knowledge or authorization, she has not plausibly alleged facts to support all the elements of an FCRA claim.  She asserts that after she discovered unauthorized transactions on her USAA credit card in September and October 2022, she reported the issue to USAA, but USAA did not investigate.  She then disputed purportedly inaccurate information related to the credit card transactions, her auto loan, and another personal loan that she claims not to have authorized, with Experian, TransUnion, and Equifax in April 2023, and the credit reporting agencies forwarded her dispute to USAA.  She claims that USAA erroneously "verified" this account with the credit reporting agencies without investigation and without providing her with required verification documents.  She alleges that USAA continues to "report[] the accounts with incomplete information such as missing payment information for certain months and discrepanc[ies] in last payment dates."  (Compl. at 6.)

"[F]actually incorrect information is 'inaccurate' for purposes of FCRA . . . [, and] even if the information is technically correct, it may nonetheless be inaccurate if, through omission, it

'create[s] a materially misleading impression.'" *Seamans v. Temple Univ.*, 744 F.3d 853, 865 (3d Cir. 2014) (first citing *Boggio v. USAA Fed. Sav. Bank,* 696 F.3d 611, 616-17 (6th Cir. 2012), then quoting *Saunders v. Branch Banking & Trust Co. of Va.,* 526 F.3d 142, 148 (4th Cir. 2008)).  Missing payment information and discrepancies in payment dates such as those alleged by Hayward may constitute factual inaccuracies or misleading omissions.  However, Hayward's exhibits reveal that USAA responded on May 2, 2023, to the dispute that Hayward filed with the CFPB in April 2023 regarding credit reporting on both her auto loan and credit card; while the appended portion of USAA's response addresses the auto loan, the exhibit cuts off the portion of USAA's response specifically addressing disputes related to her credit card.  (*See* Compl. at 26-31 (concluding with a page footer stating "Page 6 of 8").)  Because it appears her conclusory allegation that USAA failed to investigate her dispute of the alleged inaccuracies in her credit report may be at odds with the documentary evidence on which her Complaint relies, the Court cannot conclude at this stage that she has plausibly alleged that USAA failed to investigate her dispute.  *See Blackwell v. United Auto Credit*, No. 20-6591, 2021 WL 1238720, at *2 (E.D. Pa. Apr. 2, 2021) ("[T]he Court need not credit an allegation that exhibits contradict." (citing *Vorchheimer v. Phila. Owner's Ass'n*, 903 F.3d 100, 112 (3d Cir. 2018)).

Moreover, to establish Article III standing to bring her FCRA claims, Hayward "bears the burden of establishing: '(1) an injury-in-fact; (2) that is fairly traceable to the defendant's challenged conduct; and (3) that is likely to be redressed by a favorable judicial decision.'" *Kelly v. RealPage Inc.*, 47 F.4th 202, 211 (3d Cir. 2022) (quoting *St. Pierre v. Retrieval-Masters Creditors Bureau, Inc.*, 898 F.3d 351, 356 (3d Cir. 2018)). An injury-in-fact must be "concrete—that is, real, and not abstract." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021) (citation and internal quotations omitted).  Although Hayward alleges that USAA furnished inaccurate

information on her credit report, she has not pled facts to establish that she incurred a concrete

injury caused by that conduct. *See id.* at 434 ("The mere presence of an inaccuracy in an internal

credit file, if it is not disclosed to a third party, causes no concrete harm.").

Accordingly, Hayward's FCRA claims will be dismissed without prejudice to

amendment. Should Hayward choose to amend these claims, she should be mindful of the points

that the Court has elaborated above about which portion of the FCRA is enforceable by private

citizens, the rights of individuals under the statute, the elements of such claims, and the

jurisdictional requirements of Article III standing and injury-in-fact.

### C.    FDCPA Claims

Hayward also has not stated a claim under the Fair Debt Collection Practices Act

("FDCPA"), 15 U.S.C. §§ 1692-1692p. "Congress enacted the FDCPA 'to eliminate abusive

debt collection practices by debt collectors, to insure that those debt collectors who refrain from

using abusive debt collection practices are not competitively disadvantaged, and to promote

consistent State action to protect consumers against debt collection abuses.'" *Rotkiske v. Klemm*,

589 U.S. 8, 10 (2019) (quoting 15 U.S.C. § 1692(e)). "The FDCPA pursues these stated

purposes by imposing affirmative requirements on debt collectors and prohibiting a range of

debt-collection practices." *Id.* (citing 15 U.S.C. §§ 1692b-1692j); *see also Riccio v. Sentry*

*Credit, Inc.*, 954 F.3d 582, 585 (3d Cir. 2020) (*en banc*) ("The FDCPA protects against abusive

debt collection practices by imposing restrictions and obligations on third-party debt

collectors."). Among other things, the FDCPA prevents debt collectors from engaging in

harassing, oppressive or abusive conduct to collect a debt, § 1692d, making false, deceptive, or

misleading representations in connection with debt collection, § 1692e, and using "unfair or

unconscionable means" to collect a debt, § 1692f. To state a claim under the FDCPA, a plaintiff

must establish that "(1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the [FDCPA] defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Moyer v. Patenaude & Felix, A.P.C.*, 991 F.3d 466, 470 (3d Cir. 2021) (internal citation omitted).

A "consumer" is defined as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). "Debt" for purposes of the FDCPA is defined as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." *Id.* § 1692a(5).

The FDCPA defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." *Id.* § 1692a(6). This statutory language focuses "on third party collection agents working for a debt owner—not on a debt owner seeking to collect debts for itself." *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 83 (2017); *see Tepper v. Amos Fin., LLC*, 898 F.3d 364, 366 (3d Cir. 2018) ("Specifically excluded from the definition's reach are . . . a creditor's officers and employees collecting debts for the creditor, a company collecting debts only for its non-debt-collector sister company, an entity collecting a debt it originated, and one collecting a debt it obtained that was not in default at the time of purchase."). In contrast, "creditor" is defined as "any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the

13

extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." *Id.* § 1692a(4).

Not only does Hayward fail to adequately allege that USAA or its officers are debt collectors, but the exhibits to the Complaint reflect that in communicating with Hayward, USAA acted as a creditor by communicating about debts owed to itself in connection with the USAA credit card and car loan. *See Guyton v. PECO*, No. 18-2547, 2018 WL 10016428, at *1 (E.D. Pa. Aug. 24, 2018), *aff'd*, 770 F. App'x 623 (3d Cir. 2019) (*per curiam*) ("Plaintiff owed the relevant 'debt' (her utility bill) to PECO, as the creditor for services rendered to her.  PECO thus is not a debt collector under the FDCPA."); *James v. Ally Bank*, No. 21-00925, 2023 WL 1093891, at *3 (E.D. Tex. Jan. 3, 2023), *report and recommendation adopted*, 2023 WL 1081270 (E.D. Tex. Jan. 27, 2023) (Ally was not a debt collector when attempting to collect a debt owed to itself in connection with financing plaintiff's car); *Lewis v. Ally Fin., Inc.*, No. 21-3839, 2022 WL 1286587, at *6 (N.D. Ga. Feb. 9, 2022), *report and recommendation adopted*, 2022 WL 1286554 (N.D. Ga. Mar. 22, 2022) (where plaintiff's "Amended Complaint only contains allegations describing Ally collecting or attempting to collect on a debt Plaintiff owed to it on her car loan, not a debt owed to another" the court could not "conclude that Ally was acting as a debt collector under the FDCPA as it pertains to this action"); *Mays v. Ally Fin.*, No. 21-1257, 2021 WL 4077948, at *3 (E.D. Pa. Sept. 8, 2021) ("Creditors—*i.e.*, entities offering or extending credit creating a debt or entities to whom a debt is owed—are generally not subject to the FDCPA."); *Darbouze v. Ditech Fin., LLC*, No. 17-01664, 2018 WL 4214145, at *3 (M.D. Pa. July 24, 2018), *report and recommendation adopted sub nom*, 2018 WL 4211730 (M.D. Pa. Sept. 4, 2018) ("[B]ecause Ditech sought to collect a debt for its own account, . . . it is recommended that the plaintiffs' FDCPA claim be dismissed for failure to state a claim upon

which relief can be granted"). The Court need not credit Hayward's conclusory statements to the contrary because her exhibits belie the allegation that USAA acted as a debt collector.[4] *See Blackwell v. United Auto Credit*, No. 20-6591, 2021 WL 1238720, at *2 (E.D. Pa. Apr. 2, 2021) ("[T]he Court need not credit an allegation that exhibits contradict." (citing *Vorchheimer v. Phila. Owner's Ass'n*, 903 F.3d 100, 112 (3d Cir. 2018)). Accordingly, Hayward's claims against USAA under the FDCPA will be dismissed with prejudice, as the Court concludes amendment would be futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002).

### D.    Remaining Consumer-Protection Claims

Hayward brings claims under three other consumer-protection statutes: the Electronic Funds Transfer Act ("EFTA"), Truth in Lending Act ("TILA"), and Fair Credit Billing Act ("FCBA"). She has failed to state a claim to relief under any of these statutes. First, the EFTA applies to electronic fund transfers from an "account," defined as a "demand deposit, savings deposit, or other asset account (other than an occasional or incidental credit balance in an open end credit plan . . . )." 15 U.S.C. § 1693a(2). "Consequently, [the EFTA] does not apply to credit-based transactions." *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 560 (9th Cir. 2010) (citing *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.,* 111 F.3d 1322, 1328 (7th Cir.1997)); *see also Walker v. J P Morgan Chase Bank, N.A.*, No. 13-2100, 2013 WL 2151713, at *5 (W.D. Tenn. May 16, 2013) ("[B]ecause EFTA deals with electronic funds transferred directly from bank accounts, it applies to debit cards, but not credit cards." (citations omitted)).

---

[4] Hayward appears to assert that USAA defined itself as a "debt collector" in one of its communications to her, but that lone disclaimer is insufficient because it was made with vague reference to USAA's disclosure requirements under "the laws of some states," not under federal law generally or the FDCPA specifically. (*See* Compl. at 36.)

The Court understands Hayward's claims under the EFTA to stem from disputes over her USAA credit card, so they fall outside that statute's coverage and will be dismissed.[5]

The TILA regulates "the relationship between lenders and consumers . . . by requiring certain disclosures regarding loan terms and arrangements." *McCutcheon v. America's Servicing Co.*, 560 F.3d 143, 147 (3d Cir. 2009). "TILA's express purpose is to 'assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit.'" *Krieger v. Bank of Am., N.A.*, 890 F.3d 429, 432 (3d Cir. 2018) (quoting *Vallies v. Sky Bank*, 432 F.3d 493, 495 (3d Cir. 2006)). "TILA generally requires that a creditor in a consumer transaction disclose, among other things: '(1) the identity of the creditor; (2) the amount financed; (3) the finance charge; (4) the annual percentage rate; (5) the sum of the amount financed and the finance charge, or total of payments; [and] (6) the number, amount, and due dates or period of payments scheduled.'" *Id.* (quoting *Cappuccio v. Prime Capital Funding LLC*, 649 F.3d 180, 188 (3d Cir. 2011)) (alteration in original). Creditors also must disclose definitions and explanations of those terms and information about borrower's rights and must do so in a manner that is reasonably understandable and noticeable to the consumer. *Id.* at 433. A consumer may file suit under TILA against a creditor who fails to comply with the relevant requirements. *Id.*; *see also* 15 U.S.C. § 1640(e).

---

[5] Even assuming that these transactions were covered by the EFTA, Hayward's Complaint and exhibits show that she disputed charges on her credit card beginning at least in October 2022 and continuing through April 2023. (*See* Compl. at 6, 26-35.) EFTA claims must be brought "within one year from the date of the occurrence of the violation," and that limitations period "begins to run ten days after the consumer provides the oral or written notice of the alleged error to the financial institution." *Perry v. OCNAC #1 Fed. C.U.*, 423 F. Supp. 3d 67, 78 (D.N.J. 2019) (citing, *inter alia*, 15 U.S.C. § 1693m(g)). Accordingly, any claims Hayward brings under the EFTA are untimely on their face.

To state a claim for a TILA violation, a plaintiff must state "with requisite specificity which charges and fees were not properly disclosed and why certain charges and fees are not bona fide and are unreasonable in amount." *Wilson v. RoundPoint Mortg. Servicing Corp.*, No. 21-19072, 2022 WL 3913318, at *5 (D.N.J. Aug. 31, 2022) (citing *Payan v. GreenPoint Mortg. Funding, Inc.*, 681 F. Supp. 2d 564 (D.N.J. 2010)). "Without more, such assertions are merely 'bald assertions' and 'legal conclusions' without any factual support." *Id.* (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)).

To the extent that Hayward attempts to plead a TILA violation related to her auto loan, she has failed to state a claim to relief. She appended her loan agreement to her Complaint but makes no attempt to explain why the disclosures in the loan agreement failed to comply with the requirements of the TILA. Accordingly, the Court need not credit her "bald assertions" and "legal conclusions" of TILA violations that lack factual support, and her claims will be dismissed.

Hayward also claims numerous violations of the FCBA, which amended TILA to "impose[] on creditors 'requirements . . . for the correction of billing errors.'" *Krieger*, 890 F.3d at 433 (quoting *Am. Express Co. v. Koerner*, 452 U.S. 233, 234 (1981)). Under the FCBA, a creditor who receives written notice[6] from a consumer within sixty days of transmission of a credit card statement indicating the consumer's belief that his credit card statement contains a billing error has to "comply with 'two separate obligations." *Id.* (internal quotations omitted). First, the creditor must acknowledge receipt of the consumer's notice within thirty days of

---

[6] "Written notice must be delivered to the address identified by the creditor for submitting billing disputes at the time the consumer opened the account." *Gregor v. TD Bank, N.A.*, Civ. A. No. 21-05255, 2021 WL 4490251, at *4 (D.N.J. Oct. 1, 2021) (citing 15 U.S.C. § 1666(a)).

receipt. *Id.* (citing 15 U.S.C. § 1666(a)(3)(A)). Second, within two billing cycles but not later than ninety days after the consumer files his dispute, the creditor must either correct the consumer's account or conduct an investigation and explain in writing to the consumer why the original statement was correct. *Id.* (citing 15 U.S.C. § 1666(a)(3)(B)(i)-(ii)). The FCBA established this procedure for settling disputed charges on open-end credit accounts, and "does not cover closed-ended credit transactions" such as car loans. *Herrera v. Navient Corp.,* No. 19-06583, 2021 WL 2815456, at *4 (E.D.N.Y. May 21, 2021) *see also Rajapakse v. Credit Acceptance Corp.*, No. 19-1192, 2021 WL 3059755, at *3 (6th Cir. Mar. 5, 2021) ("Rajapakse's vehicle loan is a closed-end consumer credit transaction, to which the FCBA does not apply." (citing 15 U.S.C. § 1666(d)); *Evans v. Select Portfolio Servicing, Inc.*, No. 18-5985, 2020 WL 5848619, at *11 (E.D.N.Y. Sept. 30, 2020) ("A closed-end credit transaction is one where the finance charge is divided into the term of the loan and incorporated into time payments, and includes a completed loan such as a mortgage or car loan." (quoting *Grimes v. Fremont Gen. Corp.*, 785 F. Supp. 2d 269, 286 (S.D.N.Y. 2011)). Claims under the FCBA are subject to a one-year statute of limitations, which runs from the time that the creditor fails to acknowledge and investigate the dispute within the statutorily required window. *See, e.g.*, *Royer v. Discover Fin. Servs., Inc.*, No. 22-1429, 2023 WL 7329494, at *3 n.1 (E.D. Pa. Nov. 7, 2023) (explaining that 15 U.S.C. § 1640(e) provides the one-year statute of limitations applicable to FCBA actions under § 1666(a)); *Roa v. State Farm Bank*, No. 21-881, 2021 WL 11702071, at **2-3 (E.D. Va. Oct. 22, 2021) (same).

To the extent that Hayward claims FCBA violations related to her auto loan, she has not—and cannot—state a claim to relief, because such closed-end credit transactions fall outside the FCBA's coverage. To the extent that her claims under the FCBA relate to her USAA credit

card, they suffer from two primary defects: (1) she appends documents appearing to show that USAA responded to her disputes (Compl. at 26-33) but does not include factual allegations addressing those responses, aside from the conclusory statement that "USAA did not investigate" her dispute (*Id.* at 5); and (2) her claims appear untimely on their face.

The Court understands Hayward to allege that she notified USAA of the dispute charges in September or October of 2022 (*see* Compl. at 5, 32) and her exhibits suggest that USAA responded to her disputes in October 2022, December 2022, and May 2023 (*see id.* at 31-36). More specifically, it appears that Hayward disputed a transaction dated September 15, 2022, and USAA acknowledged the dispute on October 13, 2022.  (Id. at 32.)  Accepting as true Hayward's allegation that USAA never investigated that dispute, the statutory window for completing an investigation ran ninety (90) days from October 13, 2022, until January 11, 2023.  Hayward then had one year to commence any civil action based on alleged violations of the FCBA, or until January 11, 2024.  She filed her Complaint in this action on October 21, 2024.  Accordingly, her claims under the FCBA are untimely on their face and will be dismissed.[7]  In an abundance of caution, the Court will provide her leave to amend these claims, in the event that she can provide a clearer factual narrative addressing the nature of USAA's response—or lack thereof—and the timeliness of her claims.

---

[7]  As noted above in relation to her FCRA claims, Hayward's exhibits reveal that USAA responded on May 2, 2023, to a dispute that Hayward filed with the CFPB regarding both her auto loan and credit card, although she appears to have omitted some portion of that response. (*See* Compl. at 31.)  Even if her claims in this action were based on purported flaws in that response, USAA's 90-day window to investigate the disputes it acknowledged on May 2, 2023, ran until July 31, 2023, so the statute of limitations for an FCBA claim as to that response would have expired on July 31, 2024.

### E.    Criminal Statutes

Finally, to the extent that Hayward seeks civil relief for purported violations of criminal statutes, specifically 18 U.S.C. §§ 1005 and 1028 (*see* Compl. at 12-13), she fails to state a claim.  Criminal statutes generally do not give rise to a basis for civil liability.  *See Brown v. City of Philadelphia Office of Human Res.*, 735 F. App'x 55, 56 (3d Cir. 2018) (*per curiam*) ("Brown alleges that the defendants violated various criminal statutes, but most do not provide a private cause of action.").  Indeed, the United States Supreme Court has stated that, unless specifically provided for, federal criminal statutes rarely create private rights of action.  *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 190 (1994) ("We have been quite reluctant to infer a private right of action from a criminal prohibition alone."); *Nashville Milk Co. v. Carnation Co.*, 355 U.S. 373, 377 (1958) (stating that where a statute "contains only penal sanctions for violation of it provisions; in the absence of a clear expression of congressional intent to the contrary, these sanctions should under familiar principles be considered exclusive, rather than supplemented by civil sanctions of a distinct statute").  The fact that a federal criminal statute has been violated and some person harmed does not automatically give rise to a civil claim for the injured person.  *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979); *Cannon v. University of Chicago*, 441 U.S. 677, 689 (1979).  Because amendment of any claims that seek relief under criminal statutes would be futile, and they will be dismissed with prejudice.  *See Grayson*, 293 F.3d at 108, 110.

## IV.    CONCLUSION

For the foregoing reasons, the Court will dismiss Hayward's Complaint.  Navy Federal Credit Union, Truist Bank, SunTrust Bank, and Kik Off Lending, LLC, will be terminated as Defendants in this action and Hayward's claims against them will be dismissed without prejudice

to reassertion in separate civil actions.  As outlined above, Hayward will be given leave to amend her claims against USAA under the FCRA and TILA, and under the FCBA to the extent they relate to her USAA credit card.  Her remaining claims will be dismissed with prejudice.  An appropriate Order follows, which provides further information about amendment.

**BY THE COURT:**

**/s/Wendy Beetlestone, J.**

_____

**WENDY BEETLESTONE, J.**